[Cite as *Crabtree v. Dinsmoor*, 2013-Ohio-5797.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Natasha M. Crabtree, | : | |
| Petitioner-Appellee, | : | |
| | : | No. 13AP-342 |
| v. | : | (C.P.C. No. 13 DV 530) |
| James Dinsmoor, | : | (ACCELERATED CALENDAR) |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on December 31, 2013

*Chuparkoff & Junga LLP*, and *Mark A. Chuparkoff*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

KLATT, P.J.

{¶ 1} Respondent-appellant, James Dinsmoor, appeals a judgment of the Franklin County Court of Commons Pleas, Division of Domestic Relations, granting petitioner-appellee, Natasha M. Crabtree, a civil protection order against him. For the following reasons, we reverse.

{¶ 2} Crabtree filed a petition for a civil protection order on March 25, 2013. The impetus behind the petition was an incident that occurred on March 15, 2013 at a House of Japan restaurant. On that date, Crabtree was having dinner with her three children, her mother, and her mother's boyfriend when Dinsmoor arrived at the restaurant and caused a scene.

{¶ 3}   Dinsmoor is the father of one of Crabtree's children.   Crabtree and Dinsmoor had a tumultuous, "off-and-on" romantic relationship, which ended soon after their daughter, S.D., was born on September 9, 2010.   Before January 2013, Crabtree voluntarily allowed Dinsmoor to spend time with S.D.   However, after Crabtree learned that Dinsmoor had expressed concerns to Franklin County Children Services about S.D.'s safety around Crabtree's new boyfriend, Crabtree prevented Dinsmoor from seeing his daughter.

{¶ 4}   On March 15, 2013, the father of another of Crabtree's children informed Dinsmoor that S.D. was at the House of Japan restaurant.   Dinsmoor went to the restaurant to see his daughter.

{¶ 5}   According to Crabtree, Dinsmoor entered the restaurant, saw her and her family, and went to sit at the sushi bar.   Crabtree texted him a message that said, "[Y]ou need to leave now.  You're stalking me."  (Tr. 20.)  Dinsmoor then approached Crabtree's table.  Crabtree told him, "You know you need to leave."  *Id.*  Dinsmoor replied, "No[,] I'm here to see my daughter.  There's nothing you can do about it."  *Id.*  Both Crabtree's mother and the mother's boyfriend rose to confront Dinsmoor.  The restaurant manager arrived at the table and asked Dinsmoor to leave.  Dinsmoor refused.  He tried to lift S.D. from her highchair, but Crabtree prevented him from doing so.  Dinsmoor then left the restaurant.  Throughout the encounter, Dinsmoor cursed at Crabtree.

{¶ 6}   At the hearing, Dinsmoor admitted that three years prior to the March 15, 2013 incident, he had choked Crabtree.  Dinsmoor pleaded guilty to one count of domestic violence as a result.  Dinsmoor also testified that he and Crabtree had engaged in physical altercations during which Dinsmoor had pushed Crabtree and put his hand in her mouth. Neither Dinsmoor nor Crabtree specified when the physical altercations had occurred or if Crabtree had suffered any physical harm during them.

{¶ 7}   At the conclusion of the hearing, the trial court stated that it had a "real problem" with Dinsmoor causing a scene, trying to touch S.D., and calling Crabtree a crack whore in front of her children and a restaurant full of people.  (Tr. 77.)  On April 5, 2013, the trial court issued a civil protection order against Dinsmoor.

{¶ 8}   Dinsmoor now appeals the April 5, 2013 order, and he assigns the following errors:

I. The Court of Common Pleas[,] Division of Domestic Relations[,] abused its discretion when it granted Petitioner/Appellee a Domestic Protection Order against the Respondent/Appellant as such was against the manifest weight of the evidence and an abuse of the Court's discretion when there was no evidence of harm or threat of immediate harm.

II. The Trial Court erred as a matter of law when it included the parties['] minor child, [S.D.], in the Civil Protection Order as there was no evidence submitted at [the] hearing establishing any domestic violence or threat of imminent harm.

{¶ 9} By his first assignment of error, Dinsmoor argues that the trial court erred in granting Crabtree a civil protection order against him. We agree.

{¶ 10} " 'R.C. 3113.31 provides the victim of domestic violence the ability to seek immediate relief through a civil protection order, which enjoins the respondent from further violence against the family or household member.' " *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2006-Ohio-4000, ¶ 14 (10th Dist.), quoting *Parrish v. Parrish*, 95 Ohio St.3d 1201, 1204 (2002) (Lundberg Stratton, J., dissenting). To receive a civil protection order, a petitioner must show by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. Domestic violence includes: (1) attempting to cause or recklessly causing bodily injury, (2) placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of R.C. 2903.211 or 2911.211, (3) committing any act with respect to a child that would result in the child being an abused child as defined in R.C. 2151.031, and (4) committing a sexually oriented offense. R.C. 3113.31(A)(1).

{¶ 11} "When reviewing whether a trial court properly granted a [civil protection order], an appellate court must determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence." *Downs v. Strouse*, 10th Dist. No. 05AP-312, 2006-Ohio-505, ¶ 10. A reviewing court will not reverse a civil protection order simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted to the trial court. *Fleckner* at ¶ 15. If

the evidence is susceptible to more than one interpretation, the reviewing court must construe the evidence consistently with the trial court's judgment. *Id.*

{¶ 12} Here, although the trial court disapproved of Dinsmoor's behavior in the restaurant, it did not identify any act of domestic violence that occurred there. Our review of the evidence reveals that, at most, Dinsmoor only caused an embarrassing scene at the restaurant. There is no evidence that Dinsmoor attempted or threatened to physically harm Crabtree or her family. When asked if Dinsmoor threatened her, her mother, or her mother's boyfriend, Crabtree answered, "I don't recall; everything happened so fast." (Tr. 35.) There is also no evidence that anything that happened in the restaurant caused Crabtree to fear imminent serious physical harm. Therefore, after reviewing the evidence and construing it consistently with the trial court's order, we conclude that no domestic violence occurred on March 15, 2013.

{¶ 13} While the record contains no evidence of present domestic violence, it does show a past act of domestic violence. Such evidence is relevant in determining whether domestic violence occurred if the petitioner contends that the respondent committed domestic violence through a threat of force. Threats of force constitute domestic violence for the purpose of R.C. 3113.31 if the fear resulting from those threats is reasonable. *Fleckner* at ¶ 21. " 'The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent.' " *Id.* Thus, past acts of domestic violence can establish that the petitioner has a genuine, reasonable fear of violence in the present circumstances. *Strassell v. Chapman*, 10th Dist. No. 09AP-793, 2010-Ohio-4376, ¶ 20; *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 23 (7th Dist.).

{¶ 14} In the absence of evidence of a present threat that creates fear, past domestic violence does not, by itself, justify the issuance of a civil protection order. "[W]hile the court may consider past acts to determine whether the incident at issue constitutes domestic violence, the issuance of a civil protection order cannot be based solely on previous incidents of alleged domestic violence." *Id.* Generally, a petitioner cannot rely only on evidence of long-ago acts to satisfy the burden to show a current danger of domestic violence. *Pinkney v. Salett*, 8th Dist. No. 96130, 2011-Ohio-4121, ¶ 5-6; *Weber v. Weber*, 2d Dist. No. 2010-CA-40, 2011-Ohio-2980, ¶ 33-34; *McGuire v.*

*Sprinkle*, 12th Dist. No. CA2006-06-069, 2007-Ohio-2705, ¶ 22; *Newhouse v. Williams*, 167 Ohio App.3d 215, 2006-Ohio-3075, ¶ 15 (3d Dist.).

{¶ 15} Here, Crabtree failed to prove that any domestic violence occurred on March 15, 2013. Thus, the past domestic violence stands as the sole evidence Crabtree offered to support the issuance of the civil protection order. We conclude that that evidence is not competent, credible evidence of a current danger of domestic violence. Accordingly, we sustain Dinsmoor's first assignment of error.

{¶ 16} By Dinsmoor's second assignment of error, he challenges the scope of the civil protection order. The resolution of the first assignment of error moots that challenge.

{¶ 17} For the foregoing reasons, we sustain the first assignment of error, and we find the second assignment of error moot. We reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment reversed.*

TYACK and CONNOR, JJ., concur.

————————————