[Cite as *Basista v. Basista*, 2016-Ohio-146.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Cynthia T. Basista        Court of Appeals No. WD-14-076

    Appellant        Trial Court No. 11 DR 103

v.

Michael H. Basista        **DECISION AND JUDGMENT**

    Appellee        Decided: January 15, 2016

* * * * *

Martin J. Holmes, Sr. and Matthew O. Hutchinson, for appellant.

George E. Gerken, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from the September 26, 2014 judgment of the Wood County Court of Common Pleas, Domestic Relations Division, entering a second final judgment entry of divorce. In that judgment, the trial court issued its second final judgment adopting the magistrate's decision of January 25, 2013, and granting appellant,

Cynthia Basista, and appellee, Michael Basista, a divorce, dividing the marital property primarily pursuant to their stipulations, incorporating a shared parenting agreement, and awarding spousal support to appellant and child support for the minor children.

{¶ 2} On appeal from the trial court's first final judgment entered on September 24, 2013, we affirmed the decision in part and reversed in part. We reversed the decision solely because the court used an outdated worksheet in the calculation of spousal support and child support. We remanded the case directing the trial court to specifically indicate that it used the husband's current income in its calculations of spousal and child support because the trial court had found on January 1, 2013, that the husband's salary had increased from $355,890 to $765,849. *Basista v. Basista*, 6th Dist. Wood No. WD-13-081, 2014-Ohio-2828. On remand, the trial court reconsidered the issue of spousal support and child support and entered a second final judgment. Appellant appeals from that order assigning the following assignments of error:

> I. The trial court erred in ordering the exact same amount of spousal support and combined child support following the remand from this court.

> II. The trial court erred in refusing to schedule the matter for a hearing as requested by Cynthia, and then finding a lack of evidence was presented in support of Cynthia's spousal support claims.

> III. The trial court erred in determining the child support and spousal support based upon Cynthia's imputed income of $108,531 as a physician.

2.

**{¶ 3}** The facts are taken from the magistrate's findings following hearings held in September and October 2012. The parties were married in 1989 and filed for divorce in 2011. They are parents of four minor children, who are ages 11, 15, 16, and 17 in 2015.

**{¶ 4}** Appellee is a board certified gastroenterologist and internist. In 2011, he was employed by ProMedica Health Systems on a five-year contract with a salary of $355,890. Shortly after the magistrate issued a decision in January 2013, however, appellee renegotiated his contract with ProMedica and his income increased to $765,849. Appellee testified he did not know that his salary would change although his partners in private practice had renegotiated their contracts in July 2012.

**{¶ 5}** Appellant was also a physician and worked from 1986 to 2000 as an internist. She worked full time from 1986 to 1997 and part time from 1997 to 2000. Her last full time employment wage as a physician was $108,531. Appellant attempted twice early in her career to become board certified, but failed the test both times. During the marriage the couple agreed that the wife would quit working in 2000 because of the expected birth of their third child and because their other two children were under two years of age. The couple had an additional child in 2004. Appellant became the primary caretaker.

**{¶ 6}** A vocational expert testified appellant could reacquire her license after passing an examination and completing a two-year program with 100 hours of education for a cost of $20,000. Afterward, he opined, appellant should be able to obtain full-time employment as an internist making $163,000. The witness identified only one specific

3.

job opening in Cleveland, Ohio, and it required board certification. The witness further testified that while appellant's inability to pass the board certification test would affect her employability, she should still be able to obtain a full time position with a salary of $156,000. He did not however, identify any specific position that was currently available for such a physician. Appellant testified she inquired regarding a position locally and found one, but it also required board certification. She further testified that her prior position required board certification within a certain time frame. Appellee confirmed that board certification is usually required but 90 percent of physicians are able to pass the test.

{¶ 7} Appellant testified that she did not feel competent to complete the program and pass the board certification test which she previously failed when she was practicing medicine. Furthermore, she desired to work part time in order to continue to focus on raising their children.

{¶ 8} The children are educated at a private parochial school for approximately $12,000 per year; although that amount will increase to $27,000 as two children enter high school and $35,000 when three of the children are in high school. Appellee agrees that he will continue to pay for this education. Appellant testified that she desired for the children to obtain college educations. All the children are in good health. The children take music lessons and participate in sports. Family vacations consisted of various trips related to appellee's photography business, a trip twice each year to Florida to visit

4.

appellant's parents, and an annual trip to Texas to visit appellant's sister. Appellee took additional solo vacations.

{¶ 9} Appellee was in arrears in his child support payments at the time of the 2012 hearing in the amount of $10,743. He testified that he had not been informed of how much he owed.

{¶ 10} The magistrate found in a January 25, 2013 decision that appellant was voluntarily unemployed considering the age of the children, her prior employment, and her ability to work. Therefore, the magistrate imputed to appellant an income of minimum wage of $16,016 for two years and, afterward, a physician's income of $108,531. The magistrate concluded it would be unfair and inequitable not to attribute a higher income than minimum wage to appellant in light of her special skills.

{¶ 11} The magistrate also found that even after the property distribution and appellant's retraining and employment as a physician, there would be "meaningful income disparity." Appellee would have an extensive income and additional years to earn that income and no debt. Therefore, the magistrate found it reasonable to award appellant spousal support of $4,200 per month for 24 months beginning January 25, 2013, and $2,800 per month for an additional 66 months.

{¶ 12} In its September 24, 2013 judgment, the trial court overruled appellant's objections to the magistrate's decision. First, appellant objected to the magistrate imputing to her a full-time physician's income. Second, appellant objected to a reduction in appellee's spousal support and child support obligation after two years because of the

5.

imputed income to appellant. When appellant became aware of appellee's increased income, she moved to have the trial court consider appellee's increased income as additional evidence when ruling on her objections. The trial court agreed to do so.

{¶ 13} The court found imputing income was reasonable and conservative. The court found that the use of the term "fully employed" in R.C. 3119.01(C)(5)(b) required the court to impute full-time income to a voluntarily-unemployed spouse.

{¶ 14} The court further found that appellant only put forth the husband's increased income as a basis for increasing child support payments without showing that the existing payments will not support their children with an adequate standard of living. Therefore, the court rejected her objections regarding the increase in child support. Third, the court also rejected her objections to the spousal support order finding that imputing income to her was appropriate.

{¶ 15} On September 26, 2014, after our remand, the trial court reconsidered its spousal support and child support calculations using appellee's current income in the calculations. Appellant appeals from that decision. We begin by addressing appellant's third assignment of error.

### Imputed Income

{¶ 16} In her third assignment of error, appellant argues that the trial court erred by imputing income of $108,531 to her when determining the spousal and child support awards. Appellee argues that this issue is res judicata because we affirmed the final decree of the trial court except for the determination of spousal support and child support

6.

obligations based on appellee's increased income.  We disagree.  We did not review the spousal support or child support orders previously because the trial court did not attach the proper worksheets indicating the current income figure was used for appellee.  We are reviewing those awards now for the first time.

{¶ 17} R.C. 3105.18(C) does not direct the court to impute income to a party who is voluntarily unemployed when determining spousal support awards as does the child support statute, R.C. 3119.01(C)(11)(a).  However, R.C. 3105.18(C)(1) requires that the court consider among other factors, a party's earning capacity, education, mental and emotional condition, and ability to seek employment outside the home before determining what amount of spousal support would be appropriate and reasonable. *Collins v. Collins*, 9th Dist. Wayne No. 10CA0004, 2011-Ohio-2087, ¶ 46.  The trial court exercises broad discretion in determining equitable amount of spousal support and its duration based on the evidence presented.  *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990).  Its decision will not be overturned on appeal absent a showing of an abuse of discretion.  *Id*.

{¶ 18} In its determination of the spousal support award, the trial court considered, pursuant to R.C. 3105.18(C)(1), that appellant's earning ability as a physician, her young age, and her good health would enable her to earn at least $108,531.

{¶ 19} Similarly, child support obligations are based on the total of the annual gross income for each party.  R.C. 3119.021 and *Reynolds-Cornett v. Reynolds*, 12th Dist. Butler No. CA 2013-09-175, 2014-Ohio-2893, ¶ 10.  Income includes gross income of a

7.

parent "employed to full capacity" and any potential gross income of a parent who is unemployed or underemployed. R.C. 3119.01(C)(5)(a) and (b). Appellant does not challenge the finding that she was voluntarily unemployed. She only disputes the amount of income which the court imputed to her.

{¶ 20} Once a trial court has determined a party is voluntarily unemployed, for child support purposes, the court must determine the amount of income to be imputed to the party based on a consideration of the factors enumerated in R.C. 3119.01(C)(11) and any other relevant factor. *Id.* The statutory factors include the parent's employment experience, education, physical and mental disabilities, special skills and training, ability to earn the imputed income, increased earning capacity because of experience, and decreased earning capacity because of a felony conviction; and the availability of employment where the parent resides; the prevailing wage and salary levels where the parent resides, and the age and special needs of the child(ren) to be supported. The determination of the amount of income to be imputed is more than a question of fact and involves the trial court's discretion in analyzing the factors of R.C. 3119.01(C)(11)(a). Therefore, on review of a decision imputing income for child support purposes, we apply an abuse of discretion standard of review. *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993), applying former R.C. 3113.215, and *Adams v. Adams*, 6th Dist. Wood No. WD-09-022, 2009-Ohio-6257, ¶ 30.

{¶ 21} The trial court interpreted the phrase "fully employed" in R.C. 3119.01(C)(11)(a) to mean the highest paying job a parent could reasonably obtain in

8.

full-time employment. We find that this interpretation is incorrect. "Fully employed" must be interpreted in the light of the circumstances of each case depending upon the needs of the minor children and the abilities of the parent involved. *Tonti v. Tonti*, 10th Dist. Franklin Nos. 03AP-494, 03AP-728, 2004-Ohio-2529, ¶ 43 (the trial court has discretion in each case to determine the potential income of the parent and may consider the reasons the parent has for making working decisions with the primary focus on the best interests of the children), and *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist.1994). Therefore, we find that the court was not statutorily restricted as suggested by the trial court to consider appellant's employment potential only as a full-time physician.

{¶ 22} In its determination of child support, the trial court considered the R.C. 3119.01(C)(11) factors, and concluded appellant had worked 14 years as a physician, she has had substantial education, she is physically and mentally able to work, there are employment opportunities in the area, the expected first year salary would be $156,000 to $182,000, appellee has special skills and training as a physician, she can work as a physician, her ability to earn income to support her children would be in their best interest, and she has substantial earning capacity. Therefore, the trial court concluded that imputing to appellant $108,531 of income was reasonable and conservative.

{¶ 23} Appellant argues on appeal that it was unreasonable to impute significant income to her for purposes of spousal support and child support when she has not

9.

practiced medicine since 2000, not worked full time since 1996, failed her board certification exams twice in 1989 and 1990, and no longer wishes to be a physician.

{¶ 24} While the vocational expert testified that appellant could obtain employment as a non-certified internist, he did not provide any testimony regarding what type of position she could obtain other than an entry position with a salary of $156,000. Having failed twice before to become board certified, while she was a newly-licensed physician, appellant testified that she does not believe that she is capable of passing the test in the future. While the vocational expert noted that entry level internist positions do not require board certification, he did not testify that a physician could remain in that position without obtaining board certification.

{¶ 25} Nonetheless, we find that appellant has failed to demonstrate that the trial court abused its discretion. The trial court considered appellant's objections in light of an evaluation of the factors of R.C. 3105.18(C)(1) (spousal support) and R.C. 3119.01(C)(11) (child support). Without any additional evidence having been presented regarding other employment opportunities for someone with appellant's skills, the trial court was limited to imputing either: (1) the full-time, non-board certified, internist income of $156,000; (2) the income appellant had earned in the past as a full-time non-board certified internist of $108,531; or (3) a full-time, minimum wage income to appellant. By limiting appellant's imputed income to her prior income, the trial court clearly considered her prior failure to become board certified. However, the trial court still found that appellant was able to earn a physician-level income. While we might

10.

have concluded otherwise, we are not permitted as a reviewing court to substitute our judgment for that of the trial court. Therefore, we find appellant's third assignment of error not well-taken.

## Reconsideration of Spousal and Child Support Obligations

{¶ 26} In her first assignment of error, appellant argues the trial court abused its discretion when it awarded the same amount of spousal support and child support following the remand of its prior decision from this court even though appellee's income significantly increased after the hearings.

## Spousal Support Obligation

{¶ 27} We begin by addressing the spousal support award. On remand, appellant asked the court to increase the spousal support to a flat $8,000 per month. Previously, the support award was $4,200 per month for 24 months [October 1, 2013, to October 1, 2015] and $2,800 per month for the next 66 months.

{¶ 28} After a division of property is made in a divorce action, the trial court may consider whether, and for how long, an additional amount is appropriate and reasonable for spousal support. R.C. 3105.18(B). Since the amendment of R.C. 3105.18 on January 1, 1991, the award of spousal support is not based on need but what the court determines to be reasonable and appropriate. *Organ v. Organ*, 9th Dist. Summit No. 26904, 2014-Ohio-3474, ¶ 14, and *Heslep v. Heslep*, 7th Dist. Monroe No. 825, 2000 WL 818909, *4 (June 14, 2000). "The obligation to support a spouse is based on the marriage contract and on R.C. 3103.03, which requires a married person to support his or her

11.

spouse." *Dach v. Homewood*, 10th Dist. Franklin Nos. 14AP-502, 14AP-503, 2015-Ohio-4191, ¶ 26. Before making a determination of what amount of spousal support would be reasonable and appropriate, the court must have evidence of the current income and expenses of the parties. *Campbell v. Campbell*, 4th Dist. Gallia No. 92 CA 39, 1993 WL 307535, *2 (Aug. 13, 1993).

{¶ 29} In determining whether spousal support is appropriate, the court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n). The factors include each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition; the duration of the marriage; their standard of living during the marriage; inability to seek employment outside the home; contributions during the marriage; tax consequences; lost income due to a party's fulfillment of marital responsibilities; and any other factor the court finds relevant and equitable.

{¶ 30} Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. *Schultz v. Schultz,* 110 Ohio App.3d 715, 724, 675 N.E.2d 55 (10th Dist.1996). More than an error of law or judgment, an abuse of discretion connotes that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 31} In this case, the trial court reconsidered the spousal support obligation on remand and specifically addressed the factors set forth in R.C. 3105.18(C)(1). The court found that: (1) appellee's income did not increase until after the divorce proceedings

12.

were initiated; (2) appellant will, after two years of retraining and at a cost of $20,000, conservatively have the ability to earn $108,531; (3) appellant is age 52 and appellee is age 50, and there was no evidence of any impairment for either; (4) each party will have $742,000 in retirement funds; (4) the parties were married 23 years; (5) the parties do not have minor children that will impact their employability; (6) the parties established a moderate lifestyle, their children attended private schools, and they purchased some luxury items; (7) both are medical doctors; (8) after the division of assets, each party will have non-retirement assets of approximately $1.6 million, two vehicles, artwork, a residence, and no debt; (9) neither made a significant contribution to the acquisition of the other's education; (10) spousal support will be taxable to appellant and a tax deduction for appellee; and (11) appellant has not worked since 2001 and has temporarily lost income production capacity, which can be regained after two years of retraining.

{¶ 32} The trial court concluded the original award of spousal support was still reasonable and appropriate because their standard of living while married was based on an income of $355,890, and the facts that the couple lived conservatively, substantial assets were awarded to appellant, appellant was awarded the marital home free of a mortgage, and that appellant has the ability after two years of retraining to re-enter the workplace as a physician and earn at least $108,531.

{¶ 33} We find the trial court's analysis to be unreasonable. First, the trial court never considered that the couple's standard of living was driven by appellee's income and the fact that appellant did not work outside the home. Those factors have all

13.

changed. Second, the statute requires that the trial court consider the current income and earning capacities of the parties. The trial court imputed significant income to appellant even though she did not feel competent to complete the retraining and certification. Furthermore, the trial court also did not retain jurisdiction over the matter to modify the spousal support award in the event that appellant is unable to reacquire her physician's license. However, the court did not give any weight to appellee's actual income. The magistrate had originally found there was significant income disparity based on appellant's imputed income and the husband's 2011 salary. Taking into consideration appellee's nearly doubled income, there is now an unreasonable disparity in their incomes even when appellant's imputed income is considered.

{¶ 34} Therefore, we find the trial court abused its discretion by failing to adjust the spousal support award in light of appellee's current income.

### Child Support Obligation

{¶ 35} On remand, appellant asked the trial court, in light of appellee's higher actual income, to increase the husband's child support obligation to $9,276.66 per month for the first 24 months and $9,224.37 thereafter. After the court reconsidered the child support obligation, however, it erred by imposing the same obligations.

{¶ 36} The trial court is required to calculate the amount of child support each party must pay pursuant to R.C. 3119.021. Similar to spousal support, the court is required to first consider the gross income of each of the parties. "Gross income" includes all earned and unearned income of the parties, including wages, interest, and

14.

dividends. R.C. 3119.01(C)(7). The court's calculation of the parties' incomes, and the resultant child support obligations of each, is to be compiled on a worksheet developed in accordance with R.C. 3119.022.

{¶ 37} However, when incomes exceed $150,000, the court is directed to determine the amount of the child support obligation on a case-by-case basis considering "the needs and the standard of living of the children * * * and of the parents." R.C. 3119.04(B); *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶ 36. That amount should be at least the amount provided under the court schedule unless the court specifically finds that amount would be inappropriate in that case. *Id.* at 31; R.C. 3119.04(B). When a parent's income increases, it is not unreasonable to increase child support to supply "the child with a standard of living the child may enjoy if her parents were married." *Boone v. Holmes*, 10th Dist. Franklin No. 14AP-449, 2015-Ohio-2242, ¶ 16. Disparity in income is an appropriate factor to consider as well as what standard of living a child could have relative to their parent's standard of living. *Wolfe v. Wolfe*, 10th Dist. Franklin No. 04AP-409, 2005-Ohio-2331, ¶ 29; *Schultz*, 110 Ohio App.3d at 721, 675 N.E.2d 55. When reviewing child support issues, we also apply an abuse of discretion standard. *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 38} Originally, the court calculated the joint adjusted gross incomes ("AGI") of the parties to be $450,577.60 for the first 24 months and $540,936.54 thereafter due to the imputed income to appellant. After the trial court recalculated their AGI due to

15.

appellee's actual income, their AGI was $852,337.42 for the first 24 months and $942,696.40 thereafter.

{¶ 39} The trial court originally extrapolated the parties' joint child support obligation as being 19.022667 percent of their AGI, or $85,711.84 for the first 24 months and $102,900.52 thereafter. On remand, the trial court determined the child support obligation on a case-by-case method and concluded that the original amount of child support ordered ($85,711.84) was still appropriate despite appellee's higher income. The court found this amount was sufficient to maintain the children in the standard of living to which they had become accustomed during the marriage.

{¶ 40} First, we find the trial court failed to specify whether the joint obligation would remain at $85,711.84 or rise to $102,900.52 after two years. The trial court merely gave the final obligation of appellee to be $62,587.41 for the first 24 months and $49,808.51 thereafter.

{¶ 41} Second, we find the court did not consider the standards of living of both parents. While the court included appellant's imputed income in its calculations, it did not give consideration to the impact of appellee's actual rise in income. His children should be able to benefit from his increased income after the divorce in the same way that they would have if the marriage had continued.

{¶ 42} The magistrate had already specifically found "meaningful income disparity" based on appellant's imputed income as a physician and appellee's prior lower level of income. The magistrate noted that the family lived moderately, choosing to save

16.

rather than spend all their income during the marriage. While $85,711.84 may have been sufficient for the standard of living the family experienced during the marriage, it is no longer appropriate when the burden of child support has been significantly reduced for appellee because of his significant rise in income. Just because the family was able to live on less income before does not mean that it is reasonable for them to continue to do so. Under either calculation, appellant's child support obligation is a significant proportion of her imputed income while appellee's is not.

{¶ 43} Finally, in the prior order, appellee's obligation was also reduced by 15 percent for the first 24 months and 25 percent for the remaining time because of his payment of the private school tuition. However, in the decision after remand, the court stated the support amount appellee should pay, $62,587.41 or $49,808.51, "along with a separate obligation to pay the children's private school tuition." We are unable to determine from this language whether the court intended to retain the reduction for the tuition payments or make the tuition payments a separate obligation.

{¶ 44} Therefore, we find the trial court abused its discretion when it found that it was reasonable to maintain the same total child support obligation when appellee's current income was significantly higher than it was at the time the marriage ended.

{¶ 45} Therefore, we find appellant's first assignment of error well-taken.

### Evidentiary Hearing

{¶ 46} In her second assignment of error, appellant argues that the trial court erred by denying her request to hold an additional evidentiary hearing and then finding that

17.

there was a lack of evidence to support her claim that support should be increased because of appellee's current income.

{¶ 47} The trial court's decision to hold an additional evidentiary hearing is also a discretionary decision. *Booth*, 44 Ohio St.3d at 144, 541 N.E.2d 1028. Therefore, we will not overturn the trial court's decision absent a showing that the trial court abused its discretion. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶ 48} On remand, the court concluded that appellant already had an opportunity to and did argue the impact the increased salary would have upon the spousal and child support awards and should have filed an amended worksheet in connection with her objections to the September 24, 2013 order. Therefore, the trial court determined that no further hearings were required.

{¶ 49} We conclude that the trial court did not abuse its discretion by denying a second evidentiary hearing. The amount of appellee's current income had already been recognized by the court. Although the late disclosure of appellee's change in income prevented appellant from presenting additional evidence in the final hearing, she could have requested a hearing once she discovered the change in income, but she did not. Furthermore, appellant has not identified any additional evidence she would have introduced regarding the determinations of support. The trial court allowed the parties to submit trial briefs with arguments for increasing the support obligations. We find no additional evidence was necessary. Therefore, we find appellant's second assignment of error not well-taken.

18.

{¶ 50} Having found that the trial court committed error prejudicial to appellant, the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. The judgment is affirmed regarding the issue of imputing income to appellee and denying a second evidentiary hearing. However, the decision is reversed regarding the calculation of the spousal support and child support obligations. This case is remanded to the trial court for further proceedings consistent with this decision. Appellee is hereby ordered to pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed in part,
and reversed in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____
JUDGE
Thomas J. Osowik, J.

_____
James D. Jensen, P.J. JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.